IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. _____

| | | |
|---|---|---|
| SARAH PRESTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| LARRY LEAKE, in his official capacity as | ) | |
| Chairman of the North Carolina State Board | ) | |
| of Elections, GENEVIEVE C. SIMS, in her | ) | |
| official capacity as Secretary of the North | ) | |
| Carolina State Board of Elections, | ) | |
| LORRAINE G. SHINN, in her official | ) | |
| capacity as a Member of the North Carolina | ) | |
| State Board of Elections, CHARLES | ) | |
| WINFREE, in his official capacity as a | ) | |
| Member of the North Carolina State Board | ) | |
| of Elections, and ROBERT CORDLE, in his | ) | |
| official capacity as a Member of the North | ) | |
| Carolina State Board of Elections, | ) | |
| | ) | |
| Defendants. | ) | |

NOW COMES Plaintiff Sarah Preston ("Ms. Preston" or "Plaintiff") and, complaining of

Defendants Larry Leake, in his official capacity as Chairman of the North Carolina State Board

of Elections ("Mr. Leake"), Genevieve C. Sims, in her official capacity as Secretary of the North

Carolina State Board of Elections ("Ms. Sims"), Lorraine G. Shinn, in her official capacity as a

Member of the North Carolina State Board of Elections ("Ms. Shinn"), Charles Winfree, in his

official capacity as a Member of the North Carolina State Board of Elections ("Mr. Winfree"),

and Robert Cordle, in his official capacity as a Member of the North Carolina State Board of

Elections ("Mr. Cordle" and, together with Mr. Leake, Ms. Sims, Ms. Shinn, and Mr. Winfree,

the "Board of Elections" or the "Defendants"), alleges as follows:

## PRELIMINARY STATEMENT

1.     In this civil action, Plaintiff seeks prospective declaratory and injunctive relief under 42 U.S.C. § 1983 and the United States Constitution.

2.     Plaintiff – who is a lobbyist, as that term is used in Chapter 120C of the North Carolina General Statutes ("Chapter 120C") – complains that North Carolina General Statutes § 163-278.13C(a) (the "Campaign Contribution Prohibition") is unconstitutional, both facially and as applied to Plaintiff, in that it infringes on rights to freedom of speech and freedom of association guaranteed by the First and Fourteenth Amendments to the United States Constitution.

3.     The Campaign Contribution Prohibition imposes a total prohibition on certain state campaign contributions by lobbyists.  N.C. Gen. Stat. § 163-278.13C(a) (2007).  That prohibition applies without temporal or dollar amount limitation and without regard to whether the would-be recipient of the contributions is, ever has been, or will be the object of the would-be contributor's lobbying efforts.

4.     As such, the Campaign Contribution Prohibition infringes upon protected speech and associational rights, and is not adequately tailored to serve any sufficiently important government interest.  In effect, the Campaign Contribution Prohibition strips lobbyists like Plaintiff of their individual, constitutionally protected rights to associate themselves with political candidates and to symbolically express their support for candidates through contribution solely because of their chosen profession.

5.     Provisions of Chapter 163 of the North Carolina General Statutes ("Chapter 163") authorize the imposition of civil penalties for violation of the Campaign Contribution Prohibition, empower the Board of Elections to investigate such violations and report them to the

2

appropriate District Attorney for prosecution, and authorize the Attorney General of North Carolina to institute a civil action to recover an unpaid civil penalty assessed by the Board of Elections. §§ 163-278.22, -278.27, -278.34.

6.    Plaintiff desires to make campaign contributions that would violate the Campaign Contribution Prohibition and is ready, willing, and able to do so. However, Plaintiff has not made and will not make those contributions for fear of subjecting herself to civil and/or criminal liability. By this action, Plaintiff seeks a judgment declaring the Campaign Contribution Prohibition unconstitutional and enjoining Defendants from enforcing the Campaign Contribution Prohibition, as described more particularly below.

## PARTIES

7.    Ms. Preston is a resident of Wake County, North Carolina. Ms. Preston is a lobbyist, as that term is defined in N.C. Gen. Stat. § 120C-100(a)(10) (2007), for the American Civil Liberties Union of North Carolina, Inc. ("ACLU-NC"). Ms. Preston is duly registered and authorized to engage in lobbying activities on behalf of ACLU-NC, pursuant to N.C. Gen. Stat. §§ 120C-200, *et seq.* (2007). Ms. Preston is not exempted from Chapter 120C.

8.    All Defendants are sued in their official capacities only.

9.    The Board of Elections, through each of its members, is empowered to (a) conduct investigations of apparent violations of Article 22A of Chapter 163 of the North Carolina General Statutes ("Article 22A"), including violations of the Campaign Contribution Prohibition, (b) report those apparent violations for prosecution, and (c) calculate, assess, and collect civil penalties for those apparent violations. The Members of the Board of Elections, named in their official capacities as Defendants in this action, include Mr. Leake, Ms. Sims, Ms. Shinn, Mr. Winfree and Mr. Cordle.

3

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

§§ 1331 and 1343(a).

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## FACTS

### The State Government Ethics Act and Its Impact on
### Lobbyists' Ability to Make Campaign Contributions

12.     On August 4, 2006, Governor Michael F. Easley signed Session Law 2006-201,

entitled "AN ACT TO ESTABLISH THE STATE GOVERNMENT ETHICS ACT; TO

CREATE THE STATE ETHICS COMMISSION; TO ESTABLISH ETHICAL STANDARDS

FOR CERTAIN STATE PUBLIC OFFICERS, STATE EMPLOYEES, AND APPOINTEES TO

NONADVISORY STATE BOARDS AND COMMISSIONS; TO REQUIRE PUBLIC

DISCLOSURE OF ECONOMIC INTERESTS BY CERTAIN PERSONS IN THE

EXECUTIVE, LEGISLATIVE, AND JUDICIAL BRANCHES; TO AMEND THE LOBBYING

LAWS; AND TO MAKE CONFORMING CHANGES."  A true and accurate copy of Session

Law 2006-201 is attached hereto as Exhibit A.  Among other things, Session Law 2006-201

established the North Carolina State Ethics Commission and enacted Chapter 120C, which

included a predecessor to the Campaign Contribution Prohibition, effective January 1, 2007.

13.     In its preamble and recitals, which are incorporated herein by reference, Session

Law 2006-201 sets forth the government interests it was designed to serve.  Among those

interests is "that government function honestly and fairly, free from all forms of impropriety,

threats, favoritism, and undue influence."  Session Law 2006-201, however, expressly recognizes

that "because many public officials serve on a part-time basis, it is inevitable that conflicts of

interest and appearances of conflicts will occur."

4

14.     Unlike a contribution "cap" or "limit," the Campaign Contribution Prohibition is a total prohibition or ban on contributions from lobbyists.  In its entirety, the Campaign Contribution Prohibition provides:

> No lobbyist may make a contribution as defined in G.S. 163-278.6 to a candidate or candidate campaign committee as defined in G.S. 163-278.38Z when that candidate meets any of the following criteria:
>
> (1)     Is a legislator as defined in G.S. 120C-100.
>
> (2)     Is a public servant as defined in G.S. 138A-3(30)a.

N.C. Gen. Stat. § 163-278.13C(a) (2007).

15.     For purposes of the Campaign Contribution Prohibition, a "lobbyist" is an individual not specifically exempted by N.C. Gen. Stat. § 120C-700 (2007) or registered as liaison personnel who engages in lobbying and meets any of the following criteria:

> a.     Repealed by Session Laws 2007-348, s. 8(a), effective October 10, 2007.
>
> b.     Represents another person, but is not directly employed by that person, and receives compensation for the purpose of lobbying. For the purposes of this sub-subdivision, the term compensation shall not include reimbursement of actual travel and subsistence.
>
> c.     Contracts for economic consideration for the purpose of lobbying. [or]
>
> d.     Is employed by a person and a significant part of that employee's duties include lobbying. In no case shall an employee be considered a lobbyist if in no 30-day period less than five percent (5%) of that employee's actual duties include engaging in lobbying as defined in subdivision (9)a. of this section or if in no 30-day period less than five percent (5%) of that employee's actual duties include engaging in lobbying as defined in subdivision (9)b. of this section.

N.C. Gen. Stat. § 120C-100(a)(10) (2007).  In turn, "lobbying" is defined as

Any of the following:

     a.    Influencing or attempting to influence legislative or executive action, or both, through direct communication or activities with a designated individual or that person's immediate family.

     b.    Developing goodwill through communications or activities, including the building of relationships, with a designated individual or that person's immediate family with the intention of influencing current or future legislative or executive action, or both.

The term "lobbying" does not include communications or activities as part of a business, civic, religious, fraternal, personal, or commercial relationship which is not connected to legislative or executive action, or both.

N.C. Gen. Stat. § 120C-100(a)(9) (2007).

16.    For purposes of the Campaign Contribution Prohibition, the term "contribution" is defined broadly, as follows:

The terms "contribute" or "contribution" mean any advance, conveyance, deposit, distribution, transfer of funds, loan, payment, gift, pledge or subscription of money or anything of value whatsoever, to a candidate to support or oppose the nomination or election of one or more clearly identified candidates, to a political committee, to a political party, or to a referendum committee, whether or not made in an election year, and any contract, agreement, promise or other obligation, whether or not legally enforceable, to make a contribution. These terms include, without limitation, such contributions as labor or personal services, postage, publication of campaign literature or materials, in-kind transfers, loans or use of any supplies, office machinery, vehicles, aircraft, office space, or similar or related services, goods, or personal or real property. These terms also include, without limitation, the proceeds of sale of services, campaign literature and materials, wearing apparel, tickets or admission prices to campaign events such as rallies or dinners, and the proceeds of sale of any campaign-related services or goods. Notwithstanding the foregoing meanings of "contribution," the word shall not be construed to include services provided without compensation by individuals volunteering a portion or all of their time on behalf of a candidate,

6

political committee, or referendum committee. The term "contribution" does not include an "independent expenditure." If:

    a.    Any individual, person, committee, association, or any other organization or group of individuals, including but not limited to, a political organization (as defined in section 527(e)(1) of the Internal Revenue Code of 1986) makes, or contracts to make, any disbursement for any electioneering communication, as defined in G.S. 163-278.80(2) and (3) and G.S. 163-278.90(2) and (3); and

    b.    That disbursement is coordinated with a candidate, an authorized political committee of that candidate, a State or local political party or committee of that party, or an agent or official of any such candidate, party, or committee that disbursement or contracting shall be treated as a contribution to the candidate supported by the electioneering communication or that candidate's party and as an expenditure by that candidate or that candidate's party.

N.C. Gen. Stat. § 163-278.6(6) (2007). Although the definition of the term "contribution" does contain an exception for volunteered services, it does not contain any exception for expenses incidental to the provision of volunteered services.

17.    An exception to the Campaign Contribution Prohibition allows a lobbyist, who has filed a notice of candidacy for office or has been nominated, to make a contribution to his or her candidate campaign committee. § 163-278.13C(c). Otherwise, however, there are no organic limitations to the scope or applicability of the Campaign Contribution Prohibition.

18.    The Campaign Contribution Prohibition is not temporally limited (for example, by temporal proximity to an election or during the duration of a legislative session).

19.    The Campaign Contribution Prohibition applies without regard to the size of the lobbyist's contemplated contribution. There is no *de minimis* exception to the Campaign Contribution Prohibition.

7

20.     The Campaign Contribution Prohibition applies without regard to whether the would-be recipient of the contribution is, has ever been, or will be an object of the would-be contributor's lobbying activities.

21.     Prior to the enactment of the Campaign Contribution Prohibition, the only statutory restriction on state campaign contributions applicable to lobbyists but not the general public was N.C. Gen. Stat. § 163-278.13B(c) (2006) ("Section 163-278.13B(c)").  In relevant part, Section 163-278.13B(c) provided (and continues to provide):

> (c) Prohibited Contributions. -- While the General Assembly is in regular session:
>
> (1)     No limited contributor [defined to include registered lobbyists] shall make or offer to make a contribution to a limited contributee [defined to include a member of or candidate for either the Council of State or the General Assembly].
>
> (2)     No limited contributor shall make a contribution to any candidate, officeholder, or political committee, directing or requesting that the contribution be made in turn to a limited contributee.
>
> (3)     No limited contributor shall transfer any amount of money or anything of value to any entity, directing or requesting that the entity use what was transferred to contribute to a limited contributee.

N.C. Gen. Stat. § 163-278.13B(c) (2006).

### Article 22A's Civil Penalties & Possible Criminalization of Prohibited Lobbyist Campaign Contributions

22.     N.C. Gen. Stat. § 163-278.34(b) authorizes the Board of Elections to impose fines of up to three times the amount of the unlawful contribution, including an unlawful contribution under the Campaign Contribution Prohibition.  The Board of Elections is also authorized to impose other civil penalties in addition to or instead of fines, including issuing a public

8

reprimand or issuing an order requiring the violator to take certain remedial action. § 163-278.34(c).

23.     N.C. Gen. Stat. § 163-278.22(7) empowers the Board of Elections to conduct investigations of apparent violations of Article 22A, including violations of the Campaign Contribution Prohibition. The Board of Elections also has the duty and the power to calculate, assess, and collect civil penalties for violations of Article 22A, including violations of the Campaign Contribution Prohibition. § 163-278.22(14).

24.     Violations of the Campaign Contribution Prohibition may also be subject to criminal prosecution under N.C. Gen. Stat. § 163-278.27. The Board of Elections is directed to report violations of Article 22A to the appropriate district attorney for prosecution. § 163-278.22(8). N.C. Gen. Stat. §§ 163-278.27(b)(3), (b)(4), and (c) direct the district attorney of the prosecutorial district in which the individual resides to prosecute any person who violates any provision of Article 22A, including the Campaign Contribution Prohibition.

25.     N.C. Gen. Stat. § 163-278.34 empowers the Attorney General of North Carolina, upon request by the Board of Elections, to institute a civil action to recover an unpaid civil penalty assessed by the Board of Elections for violations of Article 22A, including violations of the Campaign Contribution Prohibition.

**Plaintiff Desires to Make Contributions, but Fears Prosecution
and/or the Imposition of a Civil Penalty**

26.     Prior to the enactment of the Campaign Contribution Prohibition, Ms. Preston made campaign contributions. Those contributions were legal under then-existing laws. Ms. Preston made those campaign contributions to associate herself politically with her favored candidates and to symbolically express her support for those candidates.

9

27. Ms. Preston now desires to make campaign contributions that would violate the Campaign Contribution Prohibition and is ready, willing, and able to do so. Ms. Preston desires to make such contributions in order to associate herself politically with her favored candidates and to symbolically express her support for those candidates through contribution.

28. The criminal and/or civil penalties imposed for willful noncompliance with the Campaign Contribution Prohibition put Plaintiff in a dilemma: Plaintiff must either (a) forego her constitutionally protected rights to avoid prosecution or (b) subject herself to criminal and/or civil liability. Despite Plaintiff's desire and constitutionally protected right to do so, Plaintiff will not make the above-described contributions unless and until the Campaign Contribution Prohibition is struck down because of the prospect of having criminal and/or civil penalties imposed against her. Foregoing her constitutionally protected rights in this respect, Plaintiff will have no adequate remedy at law and will continue to suffer irreparable harm unless and until the Campaign Contribution Prohibition is struck down as unconstitutional and/or Defendants are enjoined from enforcing the Campaign Contribution Prohibition against Plaintiff.

## FIRST CLAIM FOR RELIEF
### (Infringement of Plaintiff's Freedom of Political Association)

29. Plaintiff realleges and incorporates the allegations in the foregoing paragraphs.

30. Plaintiff enjoys freedoms of political association protected by the Constitution of the United States.

31. Both facially and as applied to Plaintiff, the Campaign Contribution Prohibition unconstitutionally infringes – and is continuing to unconstitutionally infringe – upon those freedoms of political association.

10

32.     Plaintiff is entitled to a declaration that the Campaign Contribution Prohibition is unconstitutional, both facially and as applied to Plaintiff, insofar as it infringes – and is continuing to unconstitutionally infringe – upon Plaintiff's freedoms of political association.

33.     Plaintiff is entitled to permanent injunctive relief, enjoining Defendants from enforcing the Campaign Contribution Prohibition against Plaintiff on the terms set forth more particularly in Plaintiff's prayer for relief below.

## SECOND CLAIM FOR RELIEF
### (Infringement of Plaintiff's Freedom of Speech)

34.     Plaintiff realleges and incorporates the allegations in the foregoing paragraphs.

35.     Plaintiff enjoys freedoms of speech protected by the Constitution of the United States.

36.     Both facially and as applied to Plaintiff, the Campaign Contribution Prohibition unconstitutionally infringes – and is continuing to unconstitutionally infringe – upon those freedoms of speech.

37.     Plaintiff is entitled to a declaration that the Campaign Contribution Prohibition is unconstitutional, both facially and as applied to Plaintiff, insofar as it infringes – and is continuing to unconstitutionally infringe – upon Plaintiff's freedoms of speech.

38.     Plaintiff is entitled to permanent injunctive relief, enjoining Defendants from enforcing the Campaign Contribution Prohibition against Plaintiff on the terms set forth more particularly in Plaintiff's prayer for relief below.

## THIRD CLAIM FOR RELIEF
### (Denial of First and Fourteenth Amendment Rights)

39.     Plaintiff realleges and incorporates the allegations in the foregoing paragraphs.

40. By proposing to make campaign contributions that would violate the Campaign Contribution Prohibition, as Plaintiff is ready, willing, and able to do, Plaintiff proposes to engage in activities protected by the First and Fourteenth Amendments to the United States Constitution.

41. Both facially and as applied to Plaintiff, the Campaign Contribution Prohibition is unconstitutionally overbroad, vague, and imposes impermissible and substantial restraints on activities protected by the First and Fourteenth Amendments.

42. As such, the Campaign Contribution Prohibition has deprived and continues to deprive Plaintiff of her constitutionally protected rights under the First and Fourteenth Amendments to the United States Constitution.

43. As such, the Campaign Contribution Prohibition is void and unenforceable.

44. Plaintiff is entitled to a declaration that the Campaign Contribution Prohibition is unconstitutional, both facially and as applied to Plaintiff, insofar as it has deprived and continues to deprive Plaintiff of her constitutionally protected rights under the First and Fourteenth Amendments to the United States Constitution.

45. Plaintiff is entitled to permanent injunctive relief, enjoining Defendants from enforcing the Campaign Contribution Prohibition against Plaintiff on the terms set forth more particularly in Plaintiff's prayer for relief below.

WHEREFORE, Plaintiff respectfully prays that the Court:

1. Declare the Campaign Contribution Prohibition to be in violation of the First and Fourteenth Amendments to the United States Constitution, both on its face and as applied to Plaintiff;

12

2.      Permanently enjoin the Board of Elections from investigating any violation or complaint of violation of the Campaign Contribution Prohibition or referring any apparent violation of the Campaign Contribution Prohibition to a district attorney for prosecution or to the Attorney General for initiation of any action to recover civil penalties;

3.      Tax the costs of this action, including reasonable attorneys' fees, upon Defendants;

4.      Grant Plaintiff a trial by jury on all issues so triable; and

5.      Award Plaintiff such other and further relief as the Court may deem just and proper.

13

This the 19th day of August, 2008.

ELLIS & WINTERS, LLP

/s/ Jonathan D. Sasser

Jonathan D. Sasser
NC State Bar No. 10028
jon.sasser@elliswinters.com
Thomas H. Segars
NC State Bar No. 29433
tom.segars@elliswinters.com
Rebecca M. Rich
NC State Bar No. 35535
rebecca.rich@elliswinters.com
Post Office Box 33550
Raleigh, North Carolina 27636
Telephone: (919) 865-7000
Facsimile: (919) 865-7010

*Lead Counsel for Plaintiff and Cooperating Attorneys for the American Civil Liberties Union of North Carolina Legal Foundation*

Katherine Lewis Parker
NC Bar No. 36263
Counsel for Plaintiff
Legal Director, American Civil Liberties Union of North Carolina Legal Foundation
Post Office Box 28004
Raleigh, North Carolina 27611
Telephone: (919) 834-3466
Facsimile: (866) 511-1344
Email: acluncklp@nc.rr.com

**Formatted:** Underline

14